324-0514, State of North Dakota doing business as Bank of North Dakota, by and through student loans of North Dakota, Appley v. Rene Prince, Appellant. All right, Mr. Adleman, you may proceed. May it please the Court, Counsel. The issue in this case is whether the five-year or ten-year statute of limitations applies to the loan documents before the Court. We contend that there is no note, written contract, or evidence of indebtedness in writing as required by the ten-year statute. There is a contract, but not one wholly in writing, so the five-year statute applies. What we have is a private student loan. There is an application and promissory note containing a promise to pay in the student portion. It says that I promise to pay all sums disbursed, plus interest and other fees, which may become due, and very importantly, I understand I may cancel or reduce the size of any loan by refusing to accept any disbursement that is issued. The student returns the application with his portion or her portion filled out to the school financial aid office, not to the bank. The financial aid office completes the school section, which contains their certification of what amount of money they believe is required in addition to federal loans and other available financial aid. The school then sends the application to the bank, which decides whether it will make a loan, what it will loan, what points or administrative fee it would charge, and the interest rate. These items are first given to the student when a disclosure statement is issued nine to 30 days after the application is submitted. Now, at this point, the student is still not bound to any contract. The student is bound under the terms of the loan documents when funds are disbursed and the loan is not cancelled or rejected either expressly or by not enrolling for the period covered by the disbursement. The bank admits that extrinsic evidence is necessary to determine whether each loan was proceeded with and in what amount. Neither the disclosure statement nor disbursement letters, which are sent out subsequently, establish that the student has enrolled and has not cancelled the loan. That's what is required to make a binding contract. The bank concedes that it is not possible to determine the amount disbursed but not cancelled without looking at one of a number of items of extrinsic evidence. The school's certification of the student's enrollment, whether a notice has been received from the school or the student that the student has not enrolled or has withdrawn or stopped attending. A database called the National Student Loan Data System, which contains the same information. A document generated several years after a loan is made and which summarizes what has been dispersed. Oral testimony such as that of Bob Bayer or the testimony and evidence of the borrower's subsequent course of conduct in dealing with the bank. The need to resort to such evidence to determine whether there is any obligation at all renders the 10-year statute inapplicable. And this is entirely apart from the issue of incorporating by reference into the application a disclosure statement created between 9 and 30 days later or disbursement letters which are issued somewhere between 26 days and 13 months after the application is submitted. It is simply not possible to determine whether the loan has been proceeded with. The bank's position is that the 10-year statute 13-206 doesn't require that after a contract is signed the bank has to prove that the other party never gave the money back. But this isn't a case where parties sign a complete agreement and then later decide to abrogate it. Rather, the documents to be disbursed and not returned to be the acceptance of the loan. You need to show offer acceptance and consideration and the offeror, the bank, may provide that acts or conduct constitute acceptance as opposed to oral or written acceptance. That's the case here. The application said, which is the only document signed by the student, says that the student becomes bound by allowing funds to be disbursed and not rejecting them. I may cancel or reduce the size of any loan by refusing to accept any disbursement that is issued. The process of acceptance through conduct is very similar to what happens in the case of a credit card which is governed by a five-year statute. The bank provides a set of terms. The terms are accepted each time the card is used in the portfolio acquisitions versus Feltman case. Providing terms that are accepted by conduct as opposed to oral or written acknowledgement and acceptance creates a conduct which is not wholly in writing and which is the definition of a note or written contract. The principle reason being that either of those categories of document require a specific amount of the obligation at its inception. Instead, the bank contends and the trial court decided that what we have is other evidence of writing. The problem with that is that also requires a definite amount of indebtedness at the outset of the obligation. There is no decision of any reviewing court of this state which has held that you can have evidence of indebtedness in writing without a definite amount of the at its inception. There is nothing that supports the trial court's contrary to conclusion. Three cases have been cited, Toth, Transler, and Estate of Garrett, and in all cases there was a specific amount of money. What this category of or this phrase in section 13-206 is meant to cover is things which are very close to a note or a written contract but aren't for some reason. Generally, the cases have involved attempts by laypersons to draft notes or written contracts and which fail in some respect. For example, in one case, Transler, the words paid to the order of were omitted. Otherwise, it would have been a note. Based on the bank's own statement that you need extrinsic evidence, parallel evidence to determine whether the loan was disbursed and proceeded with and not canceled, you do not have a written contract note or evidence of indebtedness in writing and the five-year statute applied, which was not complied with. There is extensive discussion on the subject of incorporation into the application and promissory note of documents that the bank creates after it is signed by the borrower. Regardless of incorporation, you can't tell whether the note is disbursed or the funds are disbursed and not canceled without extrinsic evidence. Of the various documents referred to, only the disclosure statements are actually referred to in the application and promissory note, which says that at the time of my first disbursement, the lender will send me a disclosure statement identifying additional terms. The disbursement letters aren't referred to in the at all and are not issued for one to 13 months after the application. The problem with incorporating this kind of document by reference is that they don't exist at the time of the submission of the application, which again is the only document signed and which shows that the student is to anything. The disclosure statements leave the question of, well, they first tell you what the points are, what the interest rate is, and other material amounts, including how much of the loan has been approved. When you get a statement like that, you can accept it or reject it. The document does not tell you which. Furthermore, when you allow incorporation of a future created document, which is what the bank contends, it raises questions. Does this introduce new terms or does it reflect existing terms that have been agreed to? In this case, it clearly reflects new terms. They've not been made known to the student previously. Another question is, did the student get it? That's also not apparent from any document. Finally, did the student agree to it or reject it or what? Again, that's not indicated. The disbursement letters are not referenced in the application. Each of them states that your loan proceeds for this loan have been sent to the above school. The school is required to hold the funds until you're present and enrolled. The letters, nor any other document that's contemporaneous with the transaction, do not show that the student, in fact, is present and enrolled. The problem created by this method of contracting is this. Let's assume the student does not enroll. They drop out or they enroll in a different school and don't give prompt notice or they find alternate financing. None of these events constitutes a breach of contract by the student. There is no obligation on the part of the student until not only are the funds received, but the student is enrolled and accepts the disbursement of the funds. This is simply not a contract from which all of the terms can be from one document or even several existing documents. The issue of whether you can incorporate a future document created by one party to a transaction is addressed at some length in the briefs. The bank relies on two federal district court cases involving somewhat different student documents. These decisions are inconsistent with other Illinois state trial court decisions. Neither resulted in a final judgment. The Yule case was settled, the agreement being that we'll apply a 10-year statute, but you only have to repay about 60% of the debt. The Trujillo case resulted in dismissal of the borrower's complaint, followed by a settlement on appeal. Neither of these cases is consistent with the first district appellate court decision in Feltman, which expressly rejects a composite document theory of any sort in which terms found in documents can be identified with a transaction and are pieced together in order to come up with all the terms. Isn't the composite document different than incorporation, though? I disagree. In incorporation, there is a reference in the signed document to a further document, but the further document doesn't exist at the time. It's like saying in a credit card agreement that we'll issue statements each month. That's true, but the statements don't exist until later, and the same problem is presented. Do these statements accurately reflect use of the card by borrower, or do we have a case of unauthorized transactions or inaccurate posting, such as double posting of a transaction by the bank or a merchant? Regardless of the name, the same problem is presented. Do these future documents accurately reflect something that the has agreed to? The document itself does not contain that information. It requires additional extrinsic evidence. The entire rationale for allowing a 10-year statute instead of a five-year statute is that the terms can be determined purely within the four corners of the contract. You need both all of the material terms and a signature or other indicio of acceptance by the borrower. You don't have that in the case of a credit card, thus the later statements, and you don't have that in the case of this particular form of student loan document, which references a disclosure statement and which makes the operative acceptance, the disbursement of funds without rejection by the student. That's not in any document, and it is the same problem that is presented in portfolio acquisitions versus Feltman. Presentation of written terms that are finally accepted by a course of conduct will never produce a written contract or other writing that satisfies 13-206. Mr. Edelman, I see that your time is up for this portion of the argument. Any questions from my colleagues? Not at this time. Not at this time. All right, Mr. Edelman, you will certainly have an opportunity in reply. Mr. Cernich, you're muted, sir. Sorry about that. May it please the Court, counsel. What we're arguing about here, or what at least my client believes this case is about, is whether each student loan in its entirety qualifies as evidence of indebtedness in writing. I wanted to address how Mr. Edelman analogized a student loan transaction to a credit card. I would say, and the fact that it can be canceled anytime, that's not the way a student loan works. The student loan transaction, it can only be canceled up until the money itself for the tuition and educational expenses is distributed by the school. But I would also equate the for a, if Section 13-206, the 10-year statute of limitations, opposing counsel argued that a bill of exchange is sort of, or maybe even exactly like a check. With a check, as I'm sure you know, or at least how they used to be done, you write the check, you pay the merchant for any goods or services you're getting, the merchant then deposits it to the bank, and then the bank lets them know, you know, in most cases credits the account or debits, but in other cases where there's not the actual amount of money in the account, the bank will return the check. And so there's that same uncertainty with a student loan, like in this case, and really with the credit card, but they're fundamentally different. But if a check could qualify as other evidence of debtedness in writing and be subject to the uncertainty that goes along with that, student loans certainly can. And that's because all of this cancel at any time, I believe that's not really the case. Now, can I just ask a question, Mr. Cernick? A check has a definite amount written on its face. It's never subject to some future alteration. Here, we don't have a definite amount. That is correct with regard to the check, but that's not the point I'm making with regard to the check. What I'm saying is the vendor, or in this case, the school or whatnot, when they sell the goods, they'll give the goods over. They don't know at that time that the customer has money in So it's that uncertainty that I'm sort of analogizing to with the uncertainty that Mr. Edelman is alleging is present here. But according to the actual evidence stated in the agreement itself, that is signed by the debtor or the borrower, it says, I promise to pay the lender or subsequent holder all sums disbursed. So that, and then that's, say, for instance, Exhibit 1. Then Exhibit 3, which is the actual disbursement statement that is sent to the borrower, that gives the borrower the exact amount that has been disbursed. But the way student loans operate, and I don't know if it's even that important or not, but it's really a three-party contract. It's the borrower signs the application and promissory note, agrees to pay a certain amount or request a certain amount. The school certifies the cost of attendance and what funds will still need to be made up after the federal loans are applied. And then finally, the lender does its part by distributing the tuition to pay for the debt. And as part of each promissory note, it shows, it's not a mystery, like, for instance, the repayment terms. Well, yes, you don't know the exact amount you'll be repaying until, say, four years in the future when you graduate college and the six-month contractual grace period comes into play. But it will, I mean, for instance, in Exhibit 1, I will repay the principal of my loan, so on and so forth, in periodic installments. My principal repayment period for each loan may not exceed 10 years. Counsel, isn't that similar to what a credit card contract would say? You're going to give me a line of credit. I'm going to take the money that I take out, and I'm going to pay it back under certain terms. I could see the facial similarity to it, but I don't think when you dig into, at the end of the day, documents being referenced by the agreement are giving an exact amount that is actually distributed. In a credit card, you can go and charge up anything up to your limit, and each individual one would be a separate agreement. So I would argue this is more similar to evidence of indebtedness in writing than it is a credit card. So, just to continue, as Mr. Edelman pointed out, the disbursement statement does require the school to hold the funds, and then once they verify that the borrower, it says by its very language, is enrolled, present and enrolled, then they apply the funds to the tuition account. After the student accepts it? It's accepted by the student being present and enrolled when the funds are distributed. Doesn't the document actually say that the student could reject it, or is this this is by operation of enrollment is what you're saying basically? Yeah, more or less. So if the student had some other terms, as Mr. Edelman said, or some other means of paying for their tuition, they just got a scholarship, and they don't need the money, it's not simply by operation as to what the tuition amount was, it will be reduced by that scholarship, right? Yes, but the private, the way, and this is explained by Mr. Mayer in his testimony, a student, what they do is they fill out, if you have kids, I don't know if any of you do or not, I do, that's where some of my questions are coming from, because I seem to remember a amount certain that was signed, not a open amount. Yeah, and this is not an open amount, when all is said and done. What happens is the borrower fills out what's known as the FAFSA form, I believe it's Free Application for Federal Student Aid or something, and the school as part of that certifies the cost of attendance, and then what most people, any of these lenders, like Bank of North Dakota, here in this case, requires, well, I won't get too much into it, but they're not gonna loan any more money than is left to pay the cost of attendance, and it says that in the agreement, but the first thing students normally do is, because the federal loans, if they need loans, the federal loans have better repayment terms, usually maybe a little bit lower interest rate than a private loan, so they take that and then apply it to subtract it from the cost of attendance, so that leaves X amount in the gap where students, they could either work, obviously, or do whatever, but another option to make up that gap is to take out a private loan, which is what Ms. Prince did in this case, but the maximum amount that Ms. Prince can get is only the rest of her cost of attendance, I guess is a confusing way of saying it. So, as for kind of delving into the other evidence of indebtedness, sort of cause of action that we proceeded on, the main requirement of other evidence of indebtedness is found in the case law, like Toth v. Manziel for one, is that there has to be a promise to pay, a vital element that must be established, and also that the transaction must be in the same nature as other enumeration of writing, is what they say, and Mr. Edelman has argued that, at least in the briefs, that this sort of writing is not like, say, a bill of exchange, a lease, so on and so forth, but to get in, I guess, the logical result of what Mr. Edelman's saying, at least as I see it, is that if there's any sort of, like, say there's, like, let's take a lease, for instance, it allows, it's a 10-year lease, it allows the lessor to reevaluate the cost of rent each month based on the market rate, or some similar sort of uncertainty. It doesn't mean that that lease is invalid, and I don't know that a court would hold that invalid, and really we have, with regard to the uncertainty, we have a similar thing here, to the extent there is even any uncertainty, which I don't concede that there is, given that Ms. Prince would have gotten all of, sent and distributed to her school, and that it wouldn't be applied to her tuition account if she didn't, in fact, become enrolled, and if she, for some reason, I believe, I can't remember which justice asked it, but what happens if she ends up, well, Justice Hedlund, I believe it was you, when she asked, when you asked what happens if she gets a scholarship, or somebody earlier mentioned what happens if she doesn't enroll, well, A, the borrower's contractually bound to notify the lending company, but also in the school's requirements, and specifically the disbursement statement, that they can't distribute the funds to her tuition account unless she is actually there, and I believe, but I'm not positive that federal law would require the school to actually notify the lender of that, but back to the elements of the promise to pay, which is the essential sort of marker of other evidence indebtedness in writing, there are four elements stated as in Kranzler to that. I don't, one is parties to the agreement, I don't think there's any real dispute about that, the nature of the transaction, the amount in question, and a reasonable implication to repay the debt. I think the only one where there's really a contest here, at least by my reading of the briefs and trial and so on, is the amount in question element of that, and with regard to that, I see I'm almost out of time, I'll just ask, you guys have any other questions for me? I do not. Okay, then I have one real quick. All right. Is it, is my recollection that the application, the APN, contained typically the administrative fee of 4%, and then it said only what the current rate was, and it said it could be higher or lower? Yes, but that would be disclosed when, and the reason, in a disclosure statement. Yeah, no, not the interest rate itself, because if it's a variable rate, these are fixed interest rates, or at least the first loan is, and so yeah, to get your question, it would be, it's discernible or ascertainable from the APN, but the actual, whatever that fixed rate is, I believe, would only come into being when the debtor leaves school and a grace period's over, and I believe that, and the reason for that, which I believe that one of our witnesses explained, was the base rate plus the margin is, you know, if you're four, five, six years in advance, is going to change once repayment starts, most likely, so thank you. Okay, so if you have something final to say, I guess, I don't want to step on, I kind of took his last 30 seconds, but. No, I requested if anybody had any question, so I'll just end with the interest, if I may, just within 10 seconds. I don't believe that the interest rate is an essential term anyway, but I do believe that if a text message, at least as one court has held in Blazek v. Kubin, the bankruptcy court, that a text message could be other evidence of indebtedness, that this certainly could qualify as it, so that's all I have. Thank you. Thank you, sir. Your honors, our position is that the key element which is missing is a definite amount, promise to pay, promise to pay what? In the example given of a check, used to be called a bill of exchange, once you write the check out, it has a definite amount, if it's delivered for consideration, you're party to a binding contract. The fact that by not having sufficient funds on hand, you breach the contract is beside the point. Once you deliver it for consideration, there is a binding contract. Here, there is no binding contract until not only are the funds sent to the school, but as stated in the APN, I understand I may cancel, reduce the size of any loan by refusing to accept any disbursement that is issued. If the student has just gotten an inheritance and no longer needs the loan, all they have to do is notify the school or notify the bank, and they are not contractually bound to anything. The acceptance of the disbursement is what creates any contractual obligation. A credit card is quite similar. You have a set of written terms. It becomes binding when you use it to purchase something or get a cash advance. At that point, you're bound to a contract on the terms that have been furnished. Here, the amount applied for is not something that is certain. The administrative fee is not provided for in the application and promissory note. It says, and I'm quoting from page 19 of the appendix, I will pay an administrative fee in an amount identified in the disclosure statement. Okay, interest. It will be in effect at the time the loan is disbursed. Interest may not be required in the case of a demand note, but where you're agreeing to, because the UCC implies that you will pay the statutory rate, but here that doesn't apply. You are going to agree on a rate of interest, and it's not in the document that you sign. Counsel refer to a lease, which provides for changes. The law on things like and variable rate of notes and certificates of deposit is this. If the change can be ascertained from a third-party source, that's okay. If it's purely within the discretion of the lender or such terms as we may later agree upon, you do not have a binding contract. It wasn't brief, but there are cases on this issue. The lease payments are to be adjusted in accordance with the cost of living index for such and such an area, plus taxes. That's a binding lease. The lessor may, in its total discretion, increase the amount of the rent. You can't have a contract which says that the lessor does that, and the lessee is obligated to take whatever the lessor chooses to impose. That is simply not a contract. The same problem here. Until the disbursement is accepted, there's no contractual obligation on the part of the student, at least a monetary obligation. The student has a choice of agreeing or not agreeing. Whether the student has agreed or not agreed cannot be determined from any piece of paper. Therefore, you have a contract, but it's subject to the five-year statute. Unless your honors have some questions, that concludes my remarks. I do not. I do not. All right, Mr. Edelman and Mr. Sernick, we thank you both very much for your arguments today. We will take the matter under advisement and issue a decision in due course.